# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

|  |  |
|---|---|
| SAMANTHA HENNESSY and MORGAN WILLIS, <br><br> Plaintiffs, <br><br> vs. <br><br> MID-AMERICA APARTMENT COMMUNITIES, INC. & MID-AMERICA APARTMENTS, LP, jointly doing business as MAA & RESIDENCES AT BURLINGTON CREEK, <br><br> Defendant. | Case No: 4:17-cv-00872-BCW |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Samantha Hennessey and Morgan Willis move for preliminary approval of the class action settlement reached between themselves and Defendants Mid-America Apartment Communities, Inc. and Mid-America Apartments, LP (collectively, "MAA") (the "Parties").

This case presents a putative class action filed under the Missouri Merchandizing Practices Act, § 407.010 R.S.Mo., and the Missouri Security Deposit Statute, § 535.300 R.S.Mo., in addition to common law claims related to breach of contract and unjust enrichment. On February 7, 2018 the Parties conducted a mediation of this case with Mr. John Phillips of Husch Blackwell. While the mediation resulted in impasse, the Parties continued to conduct discovery and hold settlement discussion thereafter, and reached a settlement resolving the claims of Plaintiff and the Settlement Class. A copy of the Settlement Agreement and Release ("Agreement") is attached hereto as **Appendix 1**.

To resolve this litigation, MAA agreed to a total Settlement Amount equal to $277,150.91 consisting of $189,000.00 non-reversionary fund to satisfy the Class's claim for damages, to be

divided *pro rata* among those of the approximately 500 class members who do not opt-out, plus MAA will also release any claims for physical damage caused to apartment units by any member of the Settlement Class, which totals approximately $88,150.91 as of February 8, 2018, the date that a tentative settlement was reached. MAA agrees that it will release and not attempt to directly or indirectly seek to collect any such amounts, or transfer or sell any such purported debts. Credit reporting, if any, of the released amounts will either be deleted or updated to show a zero balance. There is no claim form requirement for the release for physical damage done to the apartment units.

The settlement fund includes administration costs, fees and any incentive award as approved by the Court. Plaintiffs will petition the Court for attorneys' fees equal to $92,383.64, plus costs, representing one-third of the total Settlement Amount. To the extent that the Court orders an award of attorneys' fees and costs, that award will be paid from the settlement fund by the settlement administrator.

Moreover, the settlement requires notice to be sent to the class members advising them of the right to opt-out, as provided by Federal Rule 23, thus giving class members the choice of pursuing their own individual claim or staying in the class and receiving a share of the class recovery.

Plaintiffs submit this Memorandum in support of his Motion for Preliminary Approval of Settlement, certification of the class for purposes of settlement, and approval of the form, manner, and administration of notice. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object/comment or opt-out, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and

2

adequate, and it should be approved by the Court.

## I. NATURE OF THE LITIGATION

### A. Litigation, Mediation, and Settlement

On September 8, 2017, the Named Plaintiffs filed a class action petition in the Circuit Court of Jackson County, Missouri at Kansas City, alleging violations of the Missouri Merchandising Practices Act, R.S. Mo. § 407.020 et seq. ("MMPA") and Missouri Landlord-Tenants Actions, R.S.Mo. § 535.300, as well as claims for unjust enrichment and breach of contract against the Defendants. Plaintiffs assert that Defendants performed pre-move-out inspections on Plaintiffs' and the Class Members' apartment units without the Plaintiffs or Class Members being present. In Missouri a tenant has a right to be present at a move-out inspection and to receive reasonable notice of such an inspection. § 535.300.5 R.S.Mo. ("The landlord shall give the tenant or his representative reasonable notice in writing at his last known address or in person of the date and time when the landlord will inspect the dwelling unit following the termination of the rental agreement to determine the amount of the security deposit to be withheld, and the inspection shall be held at a reasonable time. The tenant shall have the right to be present at the inspection of the dwelling unit at the time and date scheduled by the landlord."). This right was further memorialized in the lease which governed the tenancy and signed by the Plaintiffs and Class Members. During these allegedly unnoticed move-out inspections, Defendants inspected for damage done of the apartment units, and assessed charges against Plaintiffs' and the Class Members' security deposits. As a result of these charges, Plaintiffs allege that Defendants wrongfully withheld the security deposits submitted by Plaintiffs and the Class Members. To redress the harm caused by the aforementioned alleged conduct, Plaintiffs brought suit in the Circuit Court of Jackson County, Missouri on September 8, 2017 alleging claims for Breach of Contract, Unjust Enrichment,

3

violations of the MMPA, and violations of the Missouri security deposit law, § 535.300 R.S.Mo.

On October 16, 2017, the Defendants filed a Notice of Removal from the Circuit Court of Jackson County, Missouri and the Litigation was then removed to the United States District Court of the Western District of Missouri (the "Court"). Plaintiffs alleged that they and other similarly situated individuals are entitled to statutory and punitive damages, attorneys' fees and costs as a result of the alleged willful violations described above. Defendants have denied all allegations and have denied that Plaintiffs are entitled to any relief. (Doc. 11.) The Parties conducted a mediation session with John Phillips of Husch Blackwell, a respected mediator, on February 7, 2018, through arm's-length negotiations, and reached an agreement in principle to resolve the Litigation, contingent upon the negotiation and execution by the Parties of a final agreement approved by the Court.

**B.     Damages Issues.**

If successful in their claim brought under R.S.Mo. § 407.020, Plaintiffs and Class Members would be entitled to recover actual damages; punitive damages; attorney's fees and expenses; and equitable relief. Damages for this case fall into two categories:  (1) For the proposed breach of contract class, damages are defined as the total amount of money collected  from Defendants' tenants as a result of a post-move out inspection for which the tenants either did not receive notice, or received insufficient notice under the lease; and (2) for the proposed security deposit class, damages are defined as double the amount of the security deposit withheld by Defendants as determined at an inspection for which the tenant either did not receive notice, or received insufficient notice.

**II.     SUMMARY OF THE PROPOSED SETTLEMENT**

The key terms of the proposed settlement are as follows:

**A.** **Class Definition.** The Settlement Class is defined as follows:

Those individuals who (A) were residents of (i) the Dentons apartment community from January 15, 2015, the date of its acquisition by MAALP, through February 8, 2018 or (ii) the Market Station apartment community from September 20, 2012, the date of its acquisition by MAALP, through February 8, 2018 and (B) who either (i) had security deposits withheld relating solely to physical damage done to an apartment unit; or (ii) paid money directly to either Defendant relating solely to physical damage done to an apartment unit.

By way of clarification, amounts paid to either Defendant that do not relate to payments for physical damage to an apartment unit are not at issue in this case and are not to be paid to the Settlement Class.

Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, this class specifically excludes persons in the following categories: (A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the Eighth Circuit; (B) the spouses of those in category (A); (C) any person within the third degree of relationship of those in categories (A) or (B); and (D) the spouses of those within category (C).

This class also specifically excludes persons employed by Defendants at any time from September 20, 2012 through February 8, 2018.

MAA has determined that the Settlement Class includes approximately 500 persons who meet this Class Definition. Those persons are identified on *Exhibit 1* to the Agreement

**B.** **Structure of the Settlement Amount.** The Agreement provides a total Settlement Amount of $277,150.91 consisting of $189,000.00 non-reversionary fund to satisfy the Class's claim for damages, to be divided among those of the approximately 500 class members who do not opt-out, plus MAA will also release any claims for physical damage caused to apartment units by any member of the Settlement Class, which totals approximately $88,150.91.

**C. Individual Class Member Benefits.** As noted above, there is no claim form required to receive the settlement benefit of MAA's released claims. In addition, Plaintiff expects each class member who submits a claim form to receive around $400 if they paid a security deposit, but it may be more or less depending on the amount of the security deposit retained for damages. If the

5

class member did not have a security deposit, but was charged damages, Class Counsel estimates that the average amount of damages charged to Settlement Class members was around $176. This means that, on average, each claimant who filed a claim and MAA did not have a security deposit, will receive around $176.

**D.** **Compensation for the Class Representative.** The typical class action settlement includes an extra payment to the class representative for their service to the class, called an "incentive" or "service award." *See*, *e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 863 (8th Cir. 2017); *Tussy v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017) ("[i]ncentive awards compensate lead plaintiffs for their work and the benefit they have conveyed on the rest of the class"); *Tennille v. Western Union Co.*, 785 F.3d 422, 428 (10th Cir. 2015). In this case, Plaintiffs will request in their motion for Final Approval an incentive award of $2,500.00 to each named Plaintiff. The class notice will advise each class member of this request.

**E.** **Payment of Attorneys' Fees and Costs.** Plaintiff will petition the Court within 30 days of preliminary approval, for reasonable attorney's fees equal to $92,383.64, representing one-third of the Settlement Amount plus reasonable costs. This award shall be Class Counsel's total recovery for attorneys' fees, costs, and adequately supported expenses of any kind (including, but not limited to, mediation fees, travel, and filing fees).

**F.** **Release.** In exchange for the relief described above, Plaintiffs Ms. Hennessey and Ms. Willis have provided a full, general release while the Class will provide a narrower release. The Class Release provides:

> "Released Claims" means any and all claims, demands, rights, liabilities and causes of action alleged relating to claims arising under the MMPA or R.S. Mo. § 535.300 and any analogous state law relating to security deposits and/or notice of inspections that the Settlement Class members have or may have against the MAA Releasees (as hereinafter defined), and constitutional claims and common law claims including but not limited to breach of contract and unjust enrichment, for

6

any type of relief, including, without limitation, actual or statutory damages, punitive damages that were asserted or could have been asserted, interest, attorneys' fees, costs, expenses, restitution, or equitable relief, based on the facts alleged in the Complaint filed in this Litigation. Each member of the Settlement Class will retain any defense relating to other claims of amount due. For example, if either Defendant claims that back rent is due, the Settlement Class member will not waive their defenses, if any, to any such claim.

*See* Agreement, attached as **Appendix 1** at p. 4-5.

**G.** *Cy Pres*. The Settlement Administrator shall mail, by first-class mail, a check to each Settlement Class Member eligible to receive payment, postmarked within 20 business days after the Effective Date. The Settlement Administrator will perform skip tracing and re-mailing, as reasonably necessary. After such efforts are exhausted, the Settlement Administrator will retain copies of the number of notices mailed, and the number of such notices returned as undeliverable. Any money remaining in the Settlement Fund after distribution of settlement proceeds and after the passage of the 180-day period within which the Settlement Class Members shall be able to negotiate their checks, shall be paid as *cy pres* to Legal Aid of Western Missouri, which is a non-profit organization agreed upon by the Parties. Once again, all of the money in the Settlement Fund will be sent to the class members and only if there is a balance from uncashed checks would any money go to *cy pres*. Except as otherwise provided in this Agreement, no money remaining in the Settlement Fund shall revert to or otherwise be paid to MAA.

**III.    THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER FEDERAL RULE 23**

To settle a case on a class basis, the class must meet the requirements for class certification. *See Manual for Complex Litigation (Fourth)* § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *2 (E.D. Mo. Dec. 11, 2013) (certifying TCPA class action). Class

certification is appropriate if the proposed class meets the elements of Federal Rule of Civil Procedure 23, including the requirement that the plaintiff and his counsel be adequate class representatives.[1]

### 1. The members of the Class are sufficiently numerous.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is undisputed that the proposed Settlement Class here consists of approximately 500 people. Thus, the Settlement Class satisfies the numerosity requirement." *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at *11 (E.D. Mo. June 30, 2005); *see McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity).

### 2. Questions of law and fact are common to the Class.

"Rule 23(a)(2)'s 'commonality' requirement is satisfied if a claim arises out of the same legal or remedial theory." *In re Charter*, 2005 WL 4045741, at *11. "The plaintiff must show that 'a classwide proceeding will generate common answers apt to drive the resolution of the litigation.'" *St. Louis Heart Center*, 2013 WL 6498245, at *6 (citing *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011)). Importantly, Rule 23(a)(2) is construed permissively: "the interests of the various plaintiffs do not have to be identical to the interests of every class member; it is enough that they share common objectives and legal or factual positions." *In re Charter*, 2005 WL 4045741, at *11.

Here, Class Members' claims stem from the same factual circumstances, in that the Settlement Class Members' had security deposits withheld or paid money directly to Defendants

---

[1] It must be noted that the superiority analysis is relaxed in the settlement context because in that context trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 (in settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

relating solely to physical damage done to an apartment unit without having been provided adequate notice an initial move-out inspection as required by the Class Members' lease and by statute. The theories of liability as to all Settlement Class Members arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a). Accordingly, the commonality requirement is satisfied.

### 3. Typicality.

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing FED. R. CIV. P. 23(a)(3)). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466-67; *see also Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 568 (S.D. Iowa 2011) ("The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Plaintiffs' claims arise from MAA's practices of withholding persons' security deposits and collecting money related to damage done to an apartment unit without providing adequate notice of a pre-move-out inspection as required by both the terms of the Class Members' leases and by statute. As discussed in the previous section, Plaintiffs' claims are the same as those advanced on behalf of the Settlement Class Members, and Plaintiffs are members of the Settlement Class. Plaintiffs' claims thus rest on the same legal and factual issues as those of the class members. That is the hallmark of typicality. *See Deiter*, 436 F.3d at 466 (citing Fed. R. Civ. P. 23(a)(3)).

9

**4. Ms. Hennessey, Ms. Willis and their counsel are adequate.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet this criterion, the representative Lead Plaintiff's interests must be consistent with, and not antagonistic to, those of the Class. Moreover, Lead Counsel must be qualified, competent and diligent." *In re Charter*, 2005 WL 4045741, at *12. As set forth above, Ms. Hennessy's and Ms. Willis' claims are aligned with the claims of the Class. Ms. Hennessy and Ms. Willis therefore have every incentive to vigorously pursue the Class Members' claims, as they has done to date.

In addition, Ms. Hennessey and Ms. Willis retained the services of experienced class counsel who have ample experience representing plaintiffs in class actions. *See* Declarations of Keith J. Keogh and A.J. Stecklein attached hereto as **Appendices 2 and 3**.

**5. Common questions predominate over any individual issues.**

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the Class satisfies Rule 23(b)(3).

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, and relate to alleged standardized procedures.

**6. Class treatment is superior.**

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because the claims in this case all arise from the same conduct on the part of MAA, a class action is the superior vehicle for determining the rights of absent class members. *St. Louis Heart Center*, 2013 WL 6498245, at *11 ("Because the statutory damages available to each individual class member are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the prosecution of separate actions.").

## IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see* also David F. Herr, *Annotated Manual for Complex Litigation,* §21.632 (4th ed. 2004); and *Nieberding v. Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 61825 at *5 (D. Kan. May 12, 2015) (Crabtree, J.).

The first step is a preliminary, pre-notification evaluation to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig*., 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This is not a final fairness hearing; its purpose, rather, is to ascertain

11

whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and an informal presentation. *See Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process— the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of class action litigation. *See Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies."); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the Court has discretion in deciding whether a settlement should be approved, one of the main factors for evaluating the settlement is the judgment of the Parties that the settlement should be approved. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable. *See Id.*; *see also In re Motor Fuel*, 2015 U.S. Dist. LEXIS 110827 at *175 (D. Kan. Aug. 21, 2015), *citing* Fed. R. Civ. P. 23(e)(2). When conducting this analysis, the

Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is fair, adequate, and reasonable, the following factors are considered: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188.

Here, the proposed Settlement easily meets each factor. The Settlement was fairly and honestly executed because it is the result of ongoing discovery and negotiations by experienced class counsel, with the initial phase of settlement discussions being prompted from a formal mediation conducted by John R. Phillips. The ultimate outcome was in doubt because of the defenses raised by MAA. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation because the Settlement offers each class member relief without the need to even submit a claim form. Finally, as noted above, and based on the foregoing, it is class counsel's judgment that the settlement is fair and reasonable.[2]

Thus, there should be no doubt that the proposed settlement is in the best interest of class members.[3] Class counsel expects no significant opposition by any class member. In short, the Parties submit that the Settlement should be preliminarily approved.

## V.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. **Appendix 1** at § IV(B). First, after entry of the Preliminary Settlement

---

[2] *See* **Appendix 2** (Decl. of Keith J. Keogh) at ¶ 16; **Appendix 3** (Decl. of A.J. Stecklein) at ¶ 9.
[3] *See* **Appendix 2** (Decl. of Keith J. Keogh) at ¶ 16; **Appendix 3** (Decl. of A.J. Stecklein) at ¶ 9.

13

Approval Order, the Claims Administrator shall cause a notice (**Appendix 1** at *Exhibit 2*) to be sent via regular mail to class members based on MAA's address records, which will advise class members about the Settlement, and specifically advises them of the estimate they will receive, as well as the incentive fee sought by Ms. Hennessey and Ms. Willis, and how attorney fees are paid. The notice directs them to the Settlement Website www.missourisecuritydepositclassactionmaa.com, where they can obtain additional information about the Settlement, including the incentive and fee petition that will be filed and the final approval motion. Moreover, Plaintiffs propose to give class members 60 days to evaluate the notice, ask questions and decide how respond to it, which is more than sufficient. *See DeJulius v. New Eng. Health Care Emples. Pension Fund*, 429 F.3d 935, 946 (10th Cir. 2005) (notice sufficient event though most class members given less than 32 days to respond).

The Settlement Website supplements the mail notice with comprehensive information about the Settlement, plus a copy of the Complaint, Answer, the Settlement Agreement, and the Preliminary Approval Order for the Settlement Class Members to review. **Appendix 1** at §IV(B)(3). The notice posted on the Settlement Website provides Settlement Class Members with a detailed explanation of their options, to enable them to make an informed decision. The notice also provides a toll-free phone number for Settlement Class Members to contact class counsel to ask questions. **Appendix 1** at *Exhibit 2*. A mailed notice combined with a Website for further information is a commonly-approved method for giving notice in class settlements. *See*, *e.g.*, *Hershey v. Exxonmobil Oil Corp.*, 2012 U.S. Dist. LEXIS 50469 at *1-*2 (D. Kan. Apr. 11, 2012); *Berkson v. Gogo, LLC*, 2015 U.S. Dist. LEXIS 163405 at *31 (E.D.N.Y. Dec. 4, 2015); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1375 (S.D. Fla. 2007); *Lane v. Facebook, Inc.*, 696 F.3d 811,

818 (9th Cir. 2012) ("All forms of notice directed class members to a website and toll-free number that contained information about the settlement.")

Third, MAA will serve upon the Attorneys General and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten days of the filing of the preliminary approval motion. **Appendix 1** at §IV.B.6.

## VI.   THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice has been given to the Settlement Class and the government, as required by 28 U.S.C. §1715, a fairness hearing should be held so that the Court may confirm that the Settlement is fair, reasonable and adequate. *See Nieberding v. Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 61825 at \*5-\*6 (D. Kan. May 12, 2015) (Crabtree, J.).

## VII.  DEFENDANTS DO NOT OBJECT TO THE RELIEF REQUESTED

MAA supports the relief requested by Plaintiff in this motion, as MAA agreed to the terms of the Settlement and does not oppose its approval.

## VIII.  SUGGESTED SCHEDULE

Time is needed to prepare and issue notice to the class members, because they need sufficient time to consider the notice and to decide whether to participate in the class, opt-out, or consult with class counsel to ask any questions that they may have about the Settlement. Accordingly, class counsel suggests the following general scheduling outline for evaluating and concluding this Settlement:

| **_____, 2018**<br>[30 days after the date of the Preliminary Approval Order] | Deadline for notice of the Settlement to be sent to the Settlement Class Members |
| --- | --- |

| | |
|---|---|
| _____, 2018<br>[60 days after the Notice Deadline] | Deadline for Settlement Class Members to request exclusion or file objections (Opt-Out and Objection Deadline) and file any statement of intention to appear at the fairness hearing. |
| _____, 2018<br>[30 days after the Opt-Out and Objection Deadline] | Deadline for Parties to file the following:<br>(1) List of persons who made timely and proper requests for exclusion (under seal); and<br>(2) Proof of Class Notice. |
| _____, 2019<br>[14 days before the Final Approval Hearing] | Motion and memorandum in support of final approval, including responses to any objections. |
| _____, 2019 at \_\_\_\_ \_.m.<br>[240 days after the Preliminary Approval Order] | Final Approval Hearing |

## VIX.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court preliminarily approve the proposed settlement and notice plan, and set the matter for a fairness hearing by entering the proposed order attached as **Appendix 1**, *Exhibit 3*, and grant such other and further relief as deemed just.

Respectfully Submitted,

/s/A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp # 66688
Stecklein & Rapp Chartered
748 Ann Ave
Kansas City, KS 66101
Telephone: (913) 371-0727
Facsimile: (913) 371-0147
aj@kcconsumerlawyer.com
mr@kcconsumerlayer.com

Keith J. Keogh (*pro hac vice*)
Amy Wells (*pro hac vice*)

16

55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Tel:  312-726-1092
keith@keoghlaw.com
awells@keoghlaw.com


*Class Counsel*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 12, 2018, I electronically filed the foregoing
document with the Clerk of the Court using CM/ECF and thereby served it on all parties.

/s/A.J. Stecklein
A.J. Stecklein